IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA FOR THE USE AND BENEFIT OF WATSON ELECTRICAL CONSTRUCTION CO., LLC, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | **COMPLAINT** |
| THE POLOTE CORPORATION, WALBRIDGE ALDINGER, LLC d/b/a WALBRIDGE ALDINGER COMPANY, TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, and LIBERTY MUTUAL INSURANCE COMPANY, | ) ) ) ) ) ) ) ) ) | Civil Action No. 5:15-cv-217 |
| Defendants. | ) ) ) | |

NOW COMES the Plaintiff, the United State of America for the use and benefit of Watson Electrical Construction Co., LLC (hereinafter "Watson") complaining of the above named Defendants as follows.

1. Watson is a limited liability company duly organized and existing under the laws of the State of North Carolina with its principal office and place of business in or about 1500 Charleston St., Wilson, Wilson County, North Carolina.

2. Upon information and belief, Defendant The Polote Corporation (hereinafter "Polote") is a corporation incorporated under the laws of Georgia with its principal place of business located at 2 East Bryan Street, Suite 400, Savannah, Georgia 31401.

3. Upon information and belief, Defendant Walbridge Aldinger, LLC d/b/a Walbridge Aldinger Company, LLC (hereinafter "Walbridge") is limited liability company operating under an assumed name under the laws of Michigan with its principal place of business located at 777 Woodward Avenue, Suite 300, Detroit, Michigan 48226.

4. Upon information and belief, Walbridge Aldinger, LLC previously operated and conducted business as Walbridge Aldinger Company, a Michigan corporation and, on or about October 27, 2014, filed a certificate of conversion to begin operating as a limited liability company.

5. Upon information and belief, Defendant Travelers Casualty and Surety Company of America (hereinafter "Travelers") is a foreign authorized insurance corporation doing business in North Carolina as a Surety with its principal place of business located at One Tower Square, Hartford, CT 06183.

6. Upon information and belief, Defendant Liberty Mutual Insurance Company (hereinafter "Liberty") is a foreign authorized insurance corporation doing business in North Carolina as a Surety with its principal place of business located at 175 Berkley Street, Boston, MA 02116.

## JURISDICTION AND VENUE

7. Jurisdiction in this case based on 28 U.S.C. § 1331 and 28 U.S.C. § 1345. This action arises in part under 40 U.S.C. § 3131 et seq. (hereinafter the "Miller Act").

8. Venue is proper pursuant to 40 U.S.C. § 3133 since this District is the one which the Prime Contract (hereinafter defined) was to be performed.

9. The amount in controversy, without interest and costs, exceeds the sum or value specified by 28 U.S.C. § 1332.

## FACTUAL BACKGROUND

10. Upon information and belief, the United States Department of the Army (hereinafter the "Owner") entered into Contract No. W912HN-10-D-0061 (hereinafter the "Prime Contract") with Polote to serve as the prime contractor on the construction of new company operation facilities at the Fort Bragg Army base located in Fort Bragg, North Carolina

11. Upon information and belief, the Prime Contract covered at least two projects, USACE-Ft. Bragg, 1st Brigade/Battalion Barracks Complex, located in Fort Bragg, North Carolina (hereinafter the "1st Brigade Project") and USACE-Ft. Bragg, 3rd Brigade/Battalion HQ Barracks Complex, project #'s 53555 and 57317, located in Fort Bragg, North Carolina (hereinafter the "3rd Brigade Project")(hereinafter collectively referred to as the "Project").

12. Upon information and belief, to fulfill a portion of its obligations under the Prime Contract, Polote entered into a subcontract agreement with Walbridge (hereinafter "Prime Subcontract") pursuant to which Walbridge was to provide labor and materials to Polote for the completion of the Project.

13. Pursuant to 40 U.S.C. § 3131(b), Polote was required to furnish a surety payment bond for the purpose of protecting certain person supplying labor and materials on the Project.

14. Polote, as principal, and Travelers and Liberty, as co-sureties, in fact issued and posted such Payment Bond No. 105618103 / 01503191 for the 3rd Brigade (hereinafter the "3rd Brigade Bond"), a true and accurate copy of which is attached hereto as **Exhibit A** and incorporated by reference.

15. Polote, as principal, and Travelers and Liberty, as co-sureties, in fact issued and posted such Payment Bond No. 105489315 / 015031393 for the 1st Brigade (hereinafter the "1st

3

Brigade Bond), a true and accurate copy of which is attached hereto as **Exhibit B** and incorporated by reference.

16. Upon information and belief, Travelers is the Lead Surety on both Payment Bonds listed herein.

17. On or about December 12, 2011, Walbridge entered into a subcontract agreement with Watson (hereinafter the "3rd Brigade Subcontract") whereby Watson agreed to perform part of Walbridge's obligated work under the Prime Subcontract by providing general electrical work on the 3rd Brigade, and Walbridge agreed to pay Watson for the same. A true and accurate copy of the 3rd Brigade Subcontract is attached hereto as **Exhibit C** and incorporated herein by reference.

18. On or about December 9, 2011, Walbridge entered into a subcontract agreement with Watson (hereinafter the "1st Brigade Subcontract") whereby Watson agreed to perform part of Walbridge's obligated work under the Prime Subcontract by providing general electrical work on the 1st Brigade, and Walbridge agreed to pay Watson for the same. A true and accurate copy of the 1st Brigade Subcontract is attached hereto as **Exhibit D** and incorporated herein by reference.

19. Watson supplied the labor and materials to Walbridge in accordance with the terms of the 1st Brigade Subcontract and the 3rd Brigade Subcontract.

20. Walbridge has failed to pay Watson the 1st Brigade Subcontract balance and change orders totaling **One Hundred Twenty-Seven Thousand, Four Hundred Thirty-Six Dollars and Fifty Cents ($127,436.50).**

21. Walbridge has failed to pay Watson the 3rd Brigade Subcontract balance and change orders totaling **One Hundred Seven Thousand, Five Hundred Fourteen Dollars and Seventeen Cents ($107,514.17).**

22. As a result of Walbridge's failure to pay Watson the 3rd Brigade Subcontract balance and change orders, Watson has made a claim on the 3rd Brigade Bond, a true and accurate copy of the claim is attached hereto as **<u>Exhibit E</u>** and incorporated by reference.

23. As a result of Walbridge's failure to pay Watson the 1st Brigade Subcontract balance and change orders, Watson has made a claim on the 1st Brigade Bond, a true and accurate copy of the claim is attached hereto as **<u>Exhibit F</u>** and incorporated by reference.

24. Upon information and belief, in addition to paying Watson for electrical labor and materials furnished on the Project, Walbridge had numerous other duties under the 1st Brigade Subcontract and 3rd Brigade Subcontract, including, without limitation:

    a. Walbridge was obligated to provide Watson, upon written request, with access to a copy of the Prime Subcontract between Polote and Walbridge;

    b. Walbridge was obligated to furnish and publish an accurate progress schedule for the Project;

    c. Walbridge was obligated to adjust the progress schedule to reflect delays in the actual work on the Project;

    d. Walbridge was obligated to adjust the progress schedule to reflect subcontractors' requests for additional time due to delays that were not the fault of subcontractors;

    e. Walbridge was obligated to seek and use information from Watson and other subcontractors regarding duration of tasks and sequences on the Project to formulate the progress schedule and adjust the progress schedule;

f.  Walbridge was obligated to coordinate, manage and supervise the work and progress of subcontractors on the Project;

g.  Walbridge was obligated to make progress payments to Watson for work completed under the subcontract, and to make said progress payments in a timely manner;

h.  Walbridge was obligated to issue justified change orders to Watson and other subcontractors and to do so in a timely manner;

i.  Walbridge was obligated to grant additional time to Watson and other subcontractors on the Project and to do so in a timely manner; and

j.  Walbridge had other duties to Watson and other subcontractors under the 1st Brigade Subcontract and 3rd Brigade Subcontract and under Federal and North Carolina law.

25. Upon information and belief, Walbridge failed to adequately perform its duties to Watson under the 1st Brigade Subcontract and 3rd Brigade Subcontract in several particulars, including, without limitation:

a.  Failing to furnish an accurate progress schedule for the Project;

b.  Failing to adjust the progress schedule to reflect delays in the actual work on the Project;

c.  Failing to adjust the progress schedule to reflect subcontractors' requests for additional time due to delays of which Walbridge was aware and that were not the fault of subcontractors;

d. Failing to seek and/or use information provided by Watson and other subcontractors regarding duration of tasks and sequences on the Project to formulate the progress schedule and adjust and revise the progress schedule;

e. Furnishing a schedule that Walbridge otherwise knew was inaccurate;

f. Hindering and delaying Watson's and other subcontractors' performance of the work for the Project;

g. Failing to insure that the Project site was ready for subcontractors to perform their work and for Watson to perform its duties under the subcontract;

h. Failing to ensure that no unreasonable delays existed on the Project and failing to take reasonable steps to prevent delays;

i. Failing to complete preliminary work in time, and failing to deliver the work site, for Watson to perform its duties under the subcontract in a timely and efficient manner;

j. Failing to schedule the work and coordinate, supervise and manage the work of the subcontractors on the Project;

k. Failing to pay Watson in full for its work performed pursuant to the subcontract, and failing to do so, when it did do so, in a timely manner;

l. Failing to issue justified change orders to Watson and other subcontractors for work on the Project, and failing to do so, when it did do so, in a timely manner;

m. Failing to grant Watson and other subcontractors additional time for work on the Project, and failing to do so in a timely manner;

n. Unnecessarily accelerating the progress schedule and increasing costs for Watson and other subcontractors; and

7

o. Otherwise failing to perform its duties under the 1st Brigade Subcontract and 3rd Brigade Subcontract and under Federal and North Carolina law.

26. Walbridge's failure to perform its duties under the 1st Brigade Subcontract and 3rd Brigade Subcontract impacted and damaged Watson in several respects, including, without limitation:

   a. Walbridge forced Watson to re-sequence its work under the subcontract;

   b. Walbridge forced Watson to demobilize and subsequently remobilize to the project site, and to different areas of the project site, multiple times;

   c. Walbridge forced Watson to perform its work in a piecemeal manner;

   d. Walbridge forced Watson to accelerate its work and thereby supplement its manpower, supervision, labor, equipment and materials on the project well beyond its originally planned levels in order to meet the demands of the progress schedule;

   e. Walbridge withheld payment from Watson for labor, materials and equipment furnished on the Project; and

   f. Walbridge otherwise damaged Watson through Walbridge's breach the 1st Brigade Subcontract and 3rd Brigade Subcontract.

27. It would be impractical for Watson to directly prove its actual losses resulting from the above delays, interference, disruption and acceleration.

28. Watson's bid on its work for the Project was reasonable.

29. Watson's actual costs incurred as a result of the above delays, disruption, interference and acceleration were reasonable.

8

30. Watson was not responsible for and did not contribute to the above delays, interference, disruption and acceleration and did not contribute to the above damages to Watson.

31. Watson did not delay, disrupt, or interfere with Walbridge or other subcontractors on the Project.

32. Walbridge has failed to pay Watson any further amounts due and owing even though, upon information and belief, Polote has fully paid Walbridge for this work under the Prime Subcontract.

33. Walbridge has thus continually failed to remit payments to Watson in a prompt and reasonable manner.

34. Because of the above breaches of the 1st Brigade Subcontract by Walbridge and because of other actions of Walbridge, Watson has been damaged in excess of **One Hundred Twenty-Seven Thousand, Four Hundred Thirty-Six Dollars and Fifty Cents ($127,436.50).**

35. Because of the above breaches of the 3rd Brigade Subcontract by Walbridge and because of other actions of Walbridge, Watson has been damaged in excess of **One Hundred Seven Thousand, Five Hundred Fourteen Dollars and Seventeen Cents ($107,514.17).**

**FIRST CLAIM FOR RELIEF**
**(BREACH OF 1st BRIGADE SUBCONTRACT BY WALBRIDGE)**
**Count 1 – Nonpayment**

36. All preceding paragraphs are hereby referenced and incorporated, to the extent not inconsistent, herein.

37. Watson entered into the 1st Brigade Subcontract to provide labor and materials for general electrical work to Walbridge on the 1st Brigade Project.

38. Watson provided said labor and materials, but Walbridge has failed or refused to pay Watson for the same despite Watson's repeated demands.

39. Walbridge has failed to fully pay Watson for the work it performed on the 1st Brigade Project and owes Watson the 1st Brigade Subcontract balance totaling **One Hundred Twenty-Seven Thousand, Four Hundred Thirty-Six Dollars and Fifty Cents ($127,436.50).**

40. Walbridge's refusal or failure to pay Watson is a breach of the 1st Brigade Subcontract.

41. Watson has demanded that Walbridge pay all monies due for labor and materials furnished under the 1st Brigade Subcontract.

42. Walbridge has failed or refused to pay Watson all monies due for labor and materials furnished under the 1st Brigade Subcontract.

43. Walbridge owes Watson the amount of at least **One Hundred Twenty-Seven Thousand, Four Hundred Thirty-Six Dollars and Fifty Cents ($127,436.50)** for labor and materials provided to Walbridge under the 1st Brigade Subcontract, plus interest at the 1st Brigade Subcontract rate, if any, or in the alternative the highest rate possible as allowed by Federal Law, from the date owed until judgment; and for attorney's fees and other costs as allowed by law.

**SECOND CLAIM FOR RELIEF**
**(BREACH OF 1st BRIGADE SUBCONTRACT BY WALBRIDGE)**
**Count 2 –Delay, Disruption, Interference, and/or Acceleration**

44. All preceding paragraphs are hereby referenced and incorporated, to the extent not inconsistent, herein.

45. Watson entered into the 1st Brigade Subcontract to provide labor and materials for general electrical work to Walbridge on the 1st Brigade Project.

46. Walbridge has breached the 1st Brigade Subcontract in several respects that delayed, disrupted, and interfered with Watson's performance of its work under the 1st Brigade Subcontract and forced Watson to delay, disrupt, accelerate, extend and/or supplement its manpower, labor, supervision, materials and equipment under the 1st Brigade Subcontract, costing Watson an amount in excess of **Five Hundred Thousand Dollars and No Cents ($500,000.00)**.

47. Watson did not cause or contribute to the delays and disruptions on the 1st Brigade Project.

48. Watson provided additional labor and materials as a result of Walbridge's delay, disruption, and interference of Watson's performance, but Walbridge has failed and/or refused to pay Watson for the same despite Watson's repeated demands.

49. Watson has demanded that Walbridge pay all monies due for labor and materials provided furnished under the 1st Brigade Subcontract and arising from Walbridge's delay, disruption, interference, and acceleration of Watson's performance.

50. Walbridge has failed or refused to pay Watson all monies due all monies due for the above alleged delay, disruption, interference, and/or acceleration.

51. The delays, disruptions, and interference by Walbridge were unexcusable but compensable and Watson is entitled to additional compensation.

52. Walbridge owes Watson in an amount in excess of **Five Hundred Thousand Dollars and No Cents ($500,000.00)** for damages resulting from Walbridge's delay, disruption, interference, and/or acceleration of Watson's performance under the 1st Brigade Subcontract, plus interest at the 1st Brigade Subcontract rate, if any, or in the alternative

the highest rate possible as allowed by Federal Law, from the date owed until judgment; and for attorney's fees and other costs as allowed by law.

### THIRD CLAIM FOR RELIEF
**(UNJUST ENRICHMENT)**
**In the Alternative to First Claim for Relief – Count 1**

53. All preceding paragraphs are hereby referenced and incorporated, to the extent not inconsistent, herein.

54. In the alternative to the First Claim for Relief against Walbridge for breach of the 1st Brigade Subcontract, Watson asserts this claim against Walbridge for unjust enrichment, for its use and benefit of all labor and materials provided to Walbridge by Watson.

55. Watson provided labor and materials for general electrical work to Walbridge for work on the 1st Brigade Project.

56. Such labor and materials were beneficial to Walbridge in that they assisted Walbridge in performing its obligations under its Prime Subcontract with Polote.

57. Walbridge has failed to pay Watson for the said labor and materials.

58. Walbridge has therefore been unjustly enriched by Watson's performance on the 1st Brigade Project and by Watson's performance under the above alleged delay, disruption, interference, and acceleration in the amount of the outstanding balance alleged above, plus the amount of the interest due to Watson in the accrued interest allegation above, plus reasonable attorney's fees incurred to pursue this action.

59. Walbridge thus owes Watson the amount of at least **One Hundred Twenty-Seven Thousand, Four Hundred Thirty-Six Dollars and Fifty Cents ($127,436.50)** plus interest at the 1st Brigade Subcontract rate, if any, or in the alternative the highest rate

possible as allowed by Federal Law, from the date owed until judgment; and for attorney's fees and other costs as allowed by law.

## FOUTH CLAIM FOR RELIEF
### (BREACH OF 3rd BRIGADE SUBCONTRACT BY WALBRIDGE)
### Count 1 –Nonpayment

60. All preceding paragraphs are hereby referenced and incorporated, to the extent not inconsistent, herein.

61. Watson entered into the 3rd Brigade Subcontract to provide labor and materials for general electrical work to Walbridge on the 3rd Brigade Project.

62. Watson provided said labor and materials, but Walbridge has failed or refused to pay Watson for the same despite Watson's repeated demands.

63. Walbridge has failed to fully pay Watson for the work it performed on the 3rd Brigade Project and owes Watson the 3rd Brigade Subcontract balance totaling **One Hundred Seven Thousand, Five Hundred Fourteen Dollars and Seventeen Cents ($107,514.17).**

64. Walbridge's refusal or failure to pay Watson is a breach of the 3rd Brigade Subcontract.

65. Watson has demanded that Walbridge pay all monies dues for labor and materials furnished under the 3rd Brigade Subcontract.

66. Walbridge has failed or refused to pay Watson all monies due all monies dues for labor and materials furnished under the 3rd Brigade Subcontract.

67. Walbridge owes Watson the amount of at least **One Hundred Seven Thousand, Five Hundred Fourteen Dollars and Seventeen Cents ($107,514.17)** for labor and materials provided to Walbridge under the 3rd Brigade Subcontract, plus interest at the 3rd Brigade Subcontract rate, if any, or in the alternative the highest rate possible as allowed by

Federal Law, from the date owed until judgment; and for attorney's fees and other costs as allowed by law.

**FIFTH CLAIM FOR RELIEF**
**(BREACH OF 3rd BRIGADE SUBCONTRACT BY WALBRIDGE)**
**Count 2 –Delay, Disruption, Interference, and/or Acceleration**

68. All preceding paragraphs are hereby referenced and incorporated, to the extent not inconsistent, herein.

69. Watson entered into the 3rd Brigade Subcontract to provide labor and materials for general electrical work to Walbridge on the 3rd Brigade Project.

70. Walbridge has breached the 3rd Brigade Subcontract in several respects that delayed, disrupted, and interfered with Watson's performance of its work under the 3rd Brigade Subcontract and forced Watson to delay, disrupt, accelerate, extend and/or supplement its manpower, labor, supervision, materials and equipment under the 3rd Brigade Subcontract, costing Watson an amount in excess of **Five Hundred Thousand Dollars and No Cents ($500,000.00)**.

71. Watson did not cause or contribute to the delays and disruptions on the 3rd Brigade Project.

72. Watson provided additional labor and materials as a result of Walbridge's delay, disruption, and interference of Watson's performance, but Walbridge has failed and/or refused to pay Watson for the same despite Watson's repeated demands.

73. Watson has demanded that Walbridge pay all monies due for labor and materials provided furnished under the 3rd Brigade Subcontract and arising from Walbridge's delay, disruption, interference, and acceleration of Watson's performance.

74. Walbridge has failed or refused to pay Watson all monies due all monies due for the above alleged delay, disruption, interference, and/or acceleration.

75. The delays, disruptions, and interference by Walbridge were unexcusable but compensable and Watson is entitled to additional compensation.

76. Walbridge owes Watson in an amount in excess of **Five Hundred Thousand Dollars and No Cents ($500,000.00)** for damages resulting from Walbridge's delay, disruption, interference, and/or acceleration of Watson's performance under the 3rd Brigade Subcontract, plus interest at the 3rd Brigade Subcontract rate, if any, or in the alternative the highest rate possible as allowed by Federal Law, from the date owed until judgment; and for attorney's fees and other costs as allowed by law.

**SIXTH CLAIM FOR RELIEF**
**(UNJUST ENRICHMENT)**
**In the Alternative to Fourth Claim for Relief – Count 1**

77. All preceding paragraphs are hereby referenced and incorporated, to the extent not inconsistent, herein.

78. In the alternative to the Second Claim for Relief against Walbridge for breach of the 3rd Brigade Subcontract, Watson asserts this claim against Walbridge for unjust enrichment, for its use and benefit of all labor and materials provided to Walbridge by Watson on the 3rd Brigade Project.

79. Watson provided labor and materials for general electrical work to Walbridge for work on the 3rd Brigade Project.

80. Such labor and materials were beneficial to Walbridge in that they assisted Walbridge in performing its obligations under its Prime Subcontract with Polote.

81. Walbridge has failed to pay Watson for the said labor and materials.

82. Walbridge has therefore been unjustly enriched by Watson's performance on the 3rd Brigade Project and by Watson's performance under the above alleged delay, disruption, interference, and acceleration in the amount of the outstanding balance alleged above, plus the amount of the interest due to Watson in the accrued interest allegation above, plus reasonable attorney's fees incurred to pursue this action.

83. Walbridge thus owes Watson the amount of at least **One Hundred Seven Thousand, Five Hundred Fourteen Dollars and Seventeen Cents ($107,514.17)** plus interest at the 3rd Brigade Subcontract rate, if any, or in the alternative the highest rate possible as allowed by Federal Law, from the date owed until judgment; and for attorney's fees and other costs as allowed by law.

## SEVENTH CLAIM FOR RELIEF
### (MILLER ACT BOND CLAIM FOR 1st BRIGADE)

84. All preceding paragraphs are hereby referenced and incorporated, to the extent not inconsistent, herein.

85. The 1st Brigade Project is the construction or alteration or repair of a public building of the Federal Government pursuant to 40 U.S.C. § 3131(b).

86. Pursuant to  40 U.S.C. § 3131(a), Polote furnished a Payment Bond as surety for the purpose of protecting certain parties supplying labor and materials on the 1st Brigade Project.

87. Watson, having a direct contractual relationship with Walbridge, is one of the parties entitled to protection under the Payment Bond as set forth under 40 U.S.C. § 3131(b)(2).

88. As more fully set forth above, Watson has not been paid the amounts due for the labor and materials provided.

89. Within ninety (90) days of the date of Watson's last day of work on the 1st Brigade Project and pursuant to 40 U.S.C. § 3131(b)(2), Watson provided written notice to Polote, Travelers, and Liberty informing these parties of Walbridge's failure to pay.

90. To date, Watson has still not been paid the amounts owed.

91. This action was commenced within one year of Watson's last work on the 1st Brigade Project.

92. All other conditions precedent or requirements of the Miller Act relating to the filing of this lawsuit have been fulfilled or have occurred.

93. Pursuant to 40 U.S.C. § 3133, this lawsuit is brought in the name of the United States of America against Walbridge, Polote, Travelers, and Liberty for all sums justly to Watson by Walbridge at the time of the filing of this lawsuit.

94. As a result of the labor and materials Watson furnished on the 1st Brigade Project for which Watson remains unpaid, and in accordance with the 1st Brigade Subcontract, the Prime Contract, the Payment Bond, and applicable Federal Acquisition Regulations, Polote, Travelers, and Liberty are jointly and severally liable to Watson in the amount of **One Hundred Twenty-Seven Thousand, Four Hundred Thirty-Six Dollars and Fifty Cents ($127,436.50)**, plus interest at the highest rate possible as allowed by law, from the date owed until judgment; and for attorney's fees and all other costs as allowed by law.

## EIGHTH CLAIM FOR RELIEF
### (MILLER ACT BOND CLAIM FOR 3rd BRIGADE)

95. All preceding paragraphs are hereby referenced and incorporated, to the extent not inconsistent, herein.

96. The 3rd Brigade Project is the construction or alteration or repair of a public building of the Federal Government pursuant to 40 U.S.C. § 3131(b).

97. Pursuant to 40 U.S.C. § 3131(a), Polote furnished a Payment Bond as surety for the purpose of protecting certain parties supplying labor and materials on the 3rd Brigade Project.

98. Watson, having a direct contractual relationship with Walbridge, is one of the parties entitled to protection under the Payment Bond as set forth under 40 U.S.C. § 3131(b)(2).

99. As more fully set forth above, Watson has not been paid the amounts due for the labor and materials provided.

100.    Within ninety (90) days of the date of Watson's last day of work on the 3rd Brigade Project and pursuant to 40 U.S.C. § 3131(b)(2), Watson provided written notice to Polote, Travelers, and Liberty informing these parties of Walbridge's failure to pay.

101.    To date, Watson has still not been paid the amounts owed.

102.    This action was commenced within one year of Watson's last work on the 3rd Brigade Project.

103.    All other conditions precedent or requirements of the Miller Act relating to the filing of this lawsuit have been fulfilled or have occurred.

104.    Pursuant to 40 U.S.C. § 3133, this lawsuit is brought in the name of the United States of America against Walbridge, Polote, Travelers, and Liberty for all sums justly to Watson by Walbridge at the time of the filing of this lawsuit.

105.    As a result of the labor and materials Watson furnished on the 3rd Brigade Project for which Watson remains unpaid, and in accordance with the 3rd Brigade Subcontract, the Prime Contract, the Payment Bond, and applicable Federal Acquisition Regulations, Polote, Travelers, and Liberty are jointly and severally liable to Watson in the amount of **One Hundred Seven Thousand, Five Hundred Fourteen Dollars and Seventeen**

**Cents ($107,514.17)**, plus interest at the highest rate possible as allowed by law, from the date owed until judgment; and for attorney's fees and all other costs as allowed by law.

<u>**NINTH CLAIM FOR RELIEF**</u>
**(VIOLATIONS OF THE PROMPT PAYMENT ACT)**

106.     All preceding paragraphs are hereby referenced and incorporated, to the extent not inconsistent, herein.

107.     As more fully set forth above, Walbridge has failed to timely remit to Watson the amounts due for Watson's work performed on the 1st Brigade Project and 3rd Brigade Project.

108.     As a result of Walbridge's repeated and continued failures to remit periodic payments to Watson in a prompt and reasonable manner as and when Walbridge received payment from Polote, Walbridge has become indebted to Watson in the amount of **Two Hundred Thirty-Four Thousand Nine Hundred Fifty Dollars and Sixty-Seven Cents ($234,950.67)** pursuant to 31 U.S.C. § 3901 et seq. (hereinafter the "Prompt Payment Act"), plus accrued interest and penalties at the Federal rate on such late payments as prescribed in the 1st Brigade Subcontract, the 3rd Brigade Subcontract, the Prime Subcontract, the applicable Federal Acquisition Regulations and/or any other applicable laws.

**WHEREFORE**, Plaintiff Watson prays this Court that it be allowed a recovery or otherwise granted relief against Defendants Polote, Walbridge, Travelers, and Liberty as follows:

1.  That Plaintiff Watson, pursuant to Watson's First Claim for Relief for Breach of the Subcontract Count 1 – Nonpayment, have a recover from Defendant Walbridge in the amount of at least **One Hundred Twenty-Seven Thousand, Four Hundred Thirty-Six**

**Dollars and Fifty Cents ($127,436.50)**, plus attorney's fees, costs, and interest from the date the payments became due until judgment, with interest accruing until paid;

2. That Plaintiff Watson, pursuant to Watson's Second Claim for Relief for Breach of the Subcontract Count 2, have a recover from Defendant Walbridge an amount in excess of **Five Hundred Thousand Dollars and No Cents ($500,000.00),** plus attorney's fees, costs, and interest from the date the payments became due until judgment, with interest accruing until paid;

3. That, in alternative to Plaintiff Watson's First Claim for Relief and pursuant to Watson's Third Claim for Relief, this Court find that Defendant Walbridge has been unjustly enriched and that Plaintiff Watson is entitled to payment in the amount of at least **One Hundred Twenty-Seven Thousand, Four Hundred Thirty-Six Dollars and Fifty Cents ($127,436.50)**, plus attorney's fees, costs, and interest from the date the payments became due until judgment, with interest accruing until paid;

4. That Plaintiff Watson, pursuant to Watson's Fourth Claim for Relief for Breach of the Subcontract Count 1 – Nonpayment, have a recover from Defendant Walbridge in the amount of at least **One Hundred Seven Thousand, Five Hundred Fourteen Dollars and Seventeen Cents ($107,514.17)**, plus attorney's fees, costs, and interest from the date the payments became due until judgment, with interest accruing until paid;

5. That Plaintiff Watson, pursuant to Watson's Fifth Claim for Relief for Breach of the Subcontract, have a recover from Defendant Walbridge an amount in excess of **Five Hundred Thousand Dollars and No Cents ($500,000.00),** plus attorney's fees, costs, and interest from the date the payments became due until judgment, with interest accruing until paid;

6. That, in alternative to Plaintiff Watson's Fourth Claim for Relief and pursuant to Watson's Sixth Claim for Relief, this Court find that Defendant Walbridge has been unjustly enriched and that Plaintiff Watson is entitled to payment in the amount of at least **One Hundred Seven Thousand, Five Hundred Fourteen Dollars and Seventeen Cents ($107,514.17)**, plus attorney's fees, costs, and interest from the date the payments became due until judgment, with interest accruing until paid;

7. That Plaintiff Watson, pursuant to Watson's Seventh Claim for Relief, have and recover from Defendants Polote, Travelers, and Liberty, jointly and severally, in the amount of at least **One Hundred Twenty-Seven Thousand, Four Hundred Thirty-Six Dollars and Fifty Cents ($127,436.50)**, plus attorney's fees, costs, and interest from the date the payments became due until judgment, with interest accruing until paid;

8. That Plaintiff Watson, pursuant to Watson's Eighth Claim for Relief, have and recover from Defendants Polote, Travelers, and Liberty, jointly and severally, in the amount of at least **One Hundred Seven Thousand, Five Hundred Fourteen Dollars and Seventeen Cents ($107,514.17)**, plus attorney's fees, costs, and interest from the date the payments became due until judgment, with interest accruing until paid;

9. That Plaintiff Watson, pursuant to Watson's Ninth Claim for Relief, have and recover from Defendant Walbridge those damages alleged in Watson's claim for violation of the Prompt Pay Act, 31 U.S.C. § 3901 et seq.;

10. That the costs of this action be assessed against Defendants, jointly and severally;

11. That Plaintiff Watson have and recover such other and further relief as the Court deems appropriate.

This the 22 day of May, 2015.

**ANDERSON JONES, PLLC**

BY:    <u>/s/ Todd A. Jones</u>
            Todd A. Jones, NCSB # 25593
            Tyrel J. Hooker, NCSB #46127
            Attorneys for Plaintiff
            PO Box 20248
            Raleigh, NC 27619
            Phone: (919) 277-2541
            Fax: (919) 277-2544